# JOHN O'FALLON & TRUSTEN POLK vs. JAMES TUCKER.

Where a trustee is authorized by the deed of trust to appoint agents or substitutes to assist in the management of the trust business, and he accepts the trust upon the express condition that he shall not be responsible for the negligence or malfeasance of any person except himself, should an agent or substitute appointed by him be guilty of malfeasance, a court of chancery will not hold him liable.

## APPEAL FROM ST. LOUIS CIRCUIT COURT

### STATEMENT OF THE CASE.

Tucker brought his bill in chancery against O'Fallon & Polk, alleging that Philander Salisbury and John Riggin made, by deed and assignment of their property, dated 1st March, 1840, to John O'Fallon and Trusten Polk, trustees for the benefit of their creditors, whereby they transferred to said trustees, all their personal and real property, and choses in action, and effects and stocks, debts, &c., in trust, to collect all debts, and sell and dispose of the property and effects in the manner deemed by them most advantageous, on credit or for cash, at public or private sale, and out of the proceeds to pay the expenses, and then to retain commissions for their services, the balance being net proceeds to apply first in payment of the creditors in full, named in the schedule No. 1, and the balance, if any, to apply in payment of the creditors named in schedule No. 2; and after they were paid in full, to apply the remainder in payment of the creditors named in schedule No. 3, and if any thing should be left, to return it to the said Salisbury and Riggin. The said Salisbury and Riggin then, by the same deed, empowered said O'Fallon & Polk, as their lawful attorneys, to appoint substitutes with full authority to act in the name of Salisbury and Riggin, to do all acts and things necessary or proper for carrying said assignment into effect.

The trustees covenant to perform and fulfil the trust according to the deed. Then comes the following covenant or provision: "and the parties hereto also agree that the said parties of the second part shall not at any time be held responsible for any greater amount of money or property than shall have been by them actually received, nor for the negligence nor malfeasance of any other persons than themselves; but they shall only be responsible for their own acts and negligence in the premises." The trustees were also authorized to arbitrate or compromise all the assigned claims at their discretion. The bill then alleged that the trustees had violated their trust by paying out the trust funds to creditors of the second and third schedules or classes, leaving the complainants demands, which was in the first class, amounted to $106 57, being three drafts in favor of Holman and Axtil, unpaid, except a per centage of 20 per cent thereon; that there were funds sufficient for the payment of the first class in full, and prays that the trustees may render an account and pay the balance due to complainants, &c.

The answer of the defendants, O'Fallon & Polk, set forth that they were induced by the earnest solicitations of Salisbury and Riggin to act as trustees; that they repeatedly refused to act, for the reason that they were both much occupied in their own business, and were not merchants; and that the said Salisbury and Riggin had been long engaged in mercantile business, and that their affairs were complicated, and that should they accept the trust, they would necessarily be compelled to employ many agents and attorneys in the settlement of the concern; nor would they consent until it was agreed that they should not be responsible for money or property not actually received by them, nor be held responsible for the negligence or malfeasance of any other persons than themselves; that with this understanding they accepted the trust; and on full deliberation, they considered it best for all concerned to keep open the store of said Salisbury & Riggin for a few weeks, and sell at private sale the bulk

of the stock: and they appointed for that purpose said Salisbury & Riggin their attorneys in fact, and employed divers clerks and agents, but put the chief control and management into the hands of said Salisbury, in whom they then and ever since reposed implicit confidence, and who, as they supposed, would be more acceptable to the creditors than any other person. The defendants further alleged that the bills receivable and choses in action assigned, proved, in a great measure, valueless, and the funds for many causes was much less than was expected, and alleged that they were not insurers of the fidelity and skilful management of their said agents and attorneys, but that as soon as they heard that said Salisbury had applied any of said funds on the second or third classes before those of the first were paid in full; they prompt-ly interposed, and took all the assets into their own hands, and dispensed with the further ser-vices of their said attorneys; that the division of the funds, partially, by said Salisbury to the second and third class of debts was made by said Salisbury in good faith, he thinking he was doing the best for the benefit of all the creditors, and that the assets would pay all the debts. The answer denies the equity of the bill, and states with its schedules the whole dispositions of the assets and application of the proceeds, and value thereof, &c. A replication was filed, and the cause was tried. and a decree made that the trustees had not duly and properly applied the money realized from the assigned assets, but neglected to execute the trust correctly, and failed to pay what was rightfully applicable to complainants debt, and that they should account for all the assets, and state the manner in which they had been disposed of and applied, and what remained on hands, &c., and appointed a commissioner to take the account.

On the hearing, the answer of the defendants was admitted, by the complainant's counsel to be true, and was read in evidence.

The said Philander Salisbury was the principal witness for the complainants, and stated that the assignees gave him charge of the assigned funds and effects, with power to dispose of them according to the deed; that after the assignment he thought that the effects assigned would pay all the debts of all the three classes, and accordingly wrote so to some of the cred-itors to send on and receive their debts in goods; and that some of them did come and receive goods and Illinois scrip to the amount of $5000 or $6000 nominally. A few days after that, defendant O'Fallon came to him, Salisbury, at the store, and with some warmth told witness that it must not be done again; that no more payments must be made to creditors of the sec-ond and third classes; and that nothing further was ever applied on them; that their payments were not made with the knowledge or by direction of the assignees, nor did the assignees know of the said propositions made to the creditors as aforesaid; that he wrote to said credit-ors without consulting the assignees; that all the payments to the second and third class creditors were made all at the same time, within four or five days of each other; that he had an indistinct recollection that he met Polk in the street and said either that he would write or that he had written to the creditors to come and take goods, and dont remember that Polk said any thing, if he ever had such conversation, and could not say whether Polk understood him or not, that as agent of assignees he was required to make to them monthly returns of what was done, that those returns did not contain the payments in goods and scrip which were the payments made to the second and third class creditors. The deed of assignment and schedule were given in evidence; and there was no other testimony on the hearing.

The commissioners report was afterwards filed, to which exceptions were in due time taken by defendants, which were overruled by the court, and a final decree was made against the defendants based on said report, requiring them to pay the complainants $205 03.

Said exceptions to the report, were as follows:

1st. That commissioner did not state correctly the true amount of debts of the first class, on 7th December 1846, to which date he calculated interest or should have done so.

2nd. That in stating the amounts of the debts of the first class, which were first to be paid, the aggregate of them, being about $32,000, the commissioner did not calculate interest on any of those demands of the first class, which had been paid in full by the trustees.

3d. That the per centage reported by the commissioner to be paid on the demands of the first class was too large.

4th. Commissioner erred in charging the defendants with the Illinois scrip at fifty cents to the dollar, instead of ascertaining the value of these goods which the agent of the trustees sold for said scrip, and charging them with that value.

5th. That commissioner erred in refusing to allow the trustees commissions on the monies received and paid by them or their agents on certain bills of exchange, and notes pledged by Salisbury and Riggin before their assignment to Benoist and to Shaw, and which the trustees redeemed by collecting funds and applying them for that purpose.

6th. That commissioner calculated interest on whole amount of those demands of first class on which partial payments had been made, up to 7th December, 1846.

7th. That he reported complainant's demand at too large an amount.

8th. That he did not allow trustees interest on the payments made to complainants, and yet calculated interest on whole demand up to 7th December, 1846.

There had been deposited before the assignment with L. A. Benoist & Co. by Salisbury & Riggin, bills and notes as collateral to secure payment of money borrowed to amount of $6490 58, which debt to Benoist is scheduled in first class; also other bills and notes had been deposited for a like purpose, with H. Shaw, to amount of $3301 59.

On these two claims of Benoist & Shaw, in full payment thereof, the trustees paid the sum of $3541 36 to Benoist, and $2373 59 to Shaw, on the collection and payment of which the court allowed no commissions.

The payments to second and third class creditors, were made in goods at prices greatly above their value, and in Illinois scrip also at par, when it was worth only 50 per cent., and amounted to between 5 and 6000 dollars; (See the answer and schedule) and on making those payments, only goods to the actual value of $862 27, and scrip of the value of only $949 11 were applied.

## SPALDING & TIFFANY, for appellants.

1. The trustees were not responsible under the circumstances, for the acts of their agent, and the decree should have, accordingly, dismissed the bill. By the assignment, they were not liable for the acts of their agents. The matter complained of was application of funds to the wrong classes. This was done by Salisbury entirely, without orders or even the knowledge of the trustees, and in good faith on his own part.

The only testimony, was the answer which complainant agreed should be read in evidence as true; and the statement of Salisbury, examined on behalf of the complainant. From them it appears that there was good faith on the behalf of all of them. The trustees used due caution and required monthly returns of their proceedings by the agents, and as soon as one of them heard of the misapplication of funds, he immediately interfered, and no further misapplications were made.

2. Story's Equity, 513, sec. 1269. The rule in all such cases is that where a trustee acts by other hands, either from necessity or conformably to common usage, he is not to be made accountable for losses. This is true, when the trust as created and imposed on the trustee, is not coupled with an express exemption of the trustee from liability from the acts of agents.

2 J. C. R. 76, trustee is not held responsible on slight grounds, when there is evidence of fair and upright intention. 4 J. C. R. 419, do. Willis on Trustees, 167; (Law Lebr. 8 vol. 79.) "It is presumed that trustees have faithfully executed their trust, unless the contrary clearly and unequivocally appears."

Ibid. 185, 6. "Trustees are anxiously protected against responsibility for accidental losses which happen in the ordinary course of a due execution of their trusts. This was formerly held only to apply to the trustees individually, and not to those employed by them; but

the rule is now extended to those cases where the trustees either from necessity or according to custom, act through the medium of others." 2 Mad 142, 3 to same effect.

1 Story's Eq. 107, Lee 90. Case of executors and administrators paying debts or legacies on good faith, and on probable grounds, will be relieved against creditors. Of course the creditor has a right to proceed against the legatee.

Analagous doctrines can be considered as applicable to agents and sub-agents. See Story on Agency, Sec. 201: "That the original attorney or agent will not be liable for the acts and omissions of the substitute appointed or employed by him, unless indeed, in the appointment or substitution he is guilty of fraud or gross negligence, or improperly co-operates in the acts or omissions."

The agent will not be responsible for the negligence or misconduct of the sub-agent, if the employment of the sub-agent is authorised by the principal, either expressly or impliedly by the usage of trade, and he has used reasonable diligence in his choice as to the skill and ability of the sub-agent. Ibid. sec. 217 a.

There was no unfitness or want of competence or integrity in the agent selected by the trustees. Salisbury was a more proper person in many respects than any other, from his intimate knowledge of the debts and accounts, and transactions of the late firm. See 11 Peters, Rep.; Tompkins vs. Wheller, at page 119, 120.

The assignor acted as agent, and the court considered him as much more competent than a stranger, and that his acting as such was no badge of fraud.

There is nothing in evidence tending to show that his character was in any respect exceptionable; which fact, want of integrity and fitness, would certainly have been proved, had it existed. His character therefore, was good, and he was in every respect a proper person to act as agent, unless the circumstance that he had made the assignment disqualified him. So far from this being the case, the assignor is very frequently employed in that capacity both by assignees and by creditors, when the character is good; thus shewing the opinion and consent of men of business, that such an appointment is prudent.

The commissioners report was affirmed, and the final decree made on the basis of it.

In this report were sundry errors excepted to; but the exceptions were overruled, and an exception was taken by appellants to this ruling of the court.

1. The commissioner erred in his statement of the amount of debts of the first class, and in the adjustment of the amounts to be paid on each. For the purpose of declaring the pro rata on these debts, he took the date of 7th December 1846, and calculated interest on them up to that time. The object was to ascertain what was the dividend on each, and especially on Tucker's demand. The way to do this was, to stake all those debts of the first class, and calculate interest on them up to the date above; then take all the assets, the whole amount of money to be divided, and apply it pro rata, on them. In this way the true dividend to which each creditor was entitled would be got at. But the commissioner did not do this. On most of those debts of first class, he did not calculate interest up to 7th December 1846; but on others, and those large ones, he did not. Had he done so, the aggregate of the debts would have been increased, and then the dividend on each proportionally diminished, so that the decree in the present case, would have been for a smaller sum.

2. The commissioner did not allow the trustees commissions on the amount disbursed in payment of Benoist & Shaw $5914 95.

The deed of assignment provided for compensation, and they were as much entitled to it on this sum, as on any portion of the fund.

3. The commissioner did not allow interest to trustees on their partial payments made on complainants demand, while he calculated interest on the whole demand; so that the complainants debts as reported by him, on which the dividend was to be made, was too large.

34

Judge BIRCH delivered the opinion of the court.

It is deemed unnecessary, in this case, to notice the points which have been raised respecting the proceedings and report of the commissioners. It is apparent that the trustees, out of more abundant pendance, expressly exempted themselves from any other duty than to appoint proper substitutes, and from liability beyond the proceeds actually coming to their hands. No question has been raised respecting the proper performance of the first duty, and, it may be added, that every thing in the testimony, and in the nature of the transaction, goes to sanction the original employment of Salisbury. It is not pretended, either, that the trustees have not fully accounted for all sums which came to their possession, so that we are unable to perceive in what respect they have been derelict either to the terms or the spirit of the trust which they assumed, or how they can be held in any respect liable for the loss occasioned by the too sanguine calculation of a person deemed proper to be appointed in the first instances, and promptly dismissed when it was seen that, even from good intentions, he had departed from the terms of the trust. Judge Ryland concurring, the decree of the circuit court is therefore reversed and the bill dismissed.